THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ADOLFO BURGOS, Defendant and Appellant.

No. 15160. Argued December 3, 1951.—Decided February 29, 1952.

*Hipólito Marcano* and *Juan Marcano* for appellant. *Víctor Gutiérrez Franqui, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas, Assistant Fiscal,* for appellee.

PER CURIAM: The District Court of Puerto Rico, Humacao Section, found appellant guilty of a violation of the *Bolita* Act, because "lists of numbers of three digits, with units to the right" were found in his possession. He was sentenced to serve six months in jail. On appeal, he alleges that the lower court committed error (1) in dismissing a motion for suppression of evidence and admitting said evidence; (2) in upholding the validity of the search warrant by virtue of which the lists were seized; (3) in refusing to take judicial notice of the boundaries or territorial limit of wards Ceiba Norte and Ceiba Sur within the Municipality of Juncos and the jurisdiction of the Court; and (4) in rendering judgment of conviction, which was contrary to and not supported by the evidence introduced.

The first three errors hinge on the validity of the search warrant under which the inculpatory evidence was seized on him. We shall consider them jointly.

The first ground adduced in the lower court to attack the validity of the search warrant was that although it was addressed "to any peace officer in the district of San Lorenzo, P. R.," it was executed, however, by a Corporal of the Insular Police of the district of Caguas together with other officers and policemen of the same precinct or judicial

district of Caguas, in contravention to the provisions of §§ 506 and 508 of the Code of Criminal Procedure.[1]

The search warrant was issued by the Judge of the Municipal Court of Puerto Rico, San Lorenzo Section, on July 5, 1950, on an affidavit sworn before him by Jaime Torres, Corporal of the Insular Police, that same day in San Lorenzo. It was executed by him on the ninth and returned that same day to the same municipal judge.

The testimony of Corporal Torres on this particular, established the fact that he was rendering service in Caguas, but although he was not *permanently* on duty in the police district of San Lorenzo, at that time "he was rendering service in the whole judicial district of Caguas," including, in addition to Caguas, "Cidra, Aguas Buenas, San Lorenzo." Consequently, since the field of action of a policeman or detective is not limited to a certain municipality or district, he may render services all over the island of Puerto Rico, either temporarily or permanently, *People* v. *Aybar*, 68 P.R.R. 6; *People* v. *Tonje*, 71 P.R.R. 295, the warrant was properly executed by an authorized person, pursuant to §§ 506 and 508 of the Code of Criminal Procedure already cited. Besides, since July 1, 1950 Puerto Rico is only one judicial district and there is but one municipal court. Organic Act of the Judiciary of Puerto Rico, No. 432 of May 5, 1950 (Sess. Laws, p. 1126); *Figueroa* v. *District Court*, 72 P.R.R. 23.

■ The second ground adduced to set aside the warrant was that the peace officer who was to carry out the warrant,

---

[1] Section 506.—"If the justice of the peace is thereupon satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a peace officer in his district, commanding him forthwith to search the person or place named, for the property specified and to bring it before the justice of the peace."

Section 508.—"A search warrant may in all cases be served by any of the officers mentioned in its directions, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."

was instructed to search *the home of Adolfo Burgos, located in Ceiba Sur ward of Juncos*, but the policeman proceeded to search *the home of Esteban Lozada, located in Ceiba Norte ward of Juncos*, where defendant lived temporarily.

The house to be searched was described in the search warrant as follows:

"Frame house, zinc-roofed, one story, painted light blue, with a door and window in front, no porch, erected on a lot belonging to Esteban Lozada Merced, of Juncos, located on the side of the road which leads from Juncos to Las Piedras, P. R. and fronting said road; said house is bounded on the West by a frame house, zinc-roofed, one story, occupied by Juan Reyes and his family, and on the East by a frame house with a concrete porch on the East and South, painted green, and occupied by Landelino Lebrón and his family."

To support this second ground of annulment, defendant introduced evidence to show that the house searched was located in Ceiba Norte ward, on the left of the road leading from Juncos to Las Piedras; that at that place, the road was the boundary line between both wards, and that the house *belonging* to the defendant, in which he had lived until he moved to the house of Esteban Lozada, his brother-in-law, in Ceiba Norte ward was on the opposite side of the road, in Ceiba Sur ward.

Corporal Torres, however, who was one of the officers who executed the warrant, testified on this particular that the house searched, where defendant lived, was located in Ceiba Sur ward, Juncos, and that he was sure of that because he had worked there three years as policeman and was familiar with all the wards; that defendant formerly lived *in the same Ceiba Sur ward*, in another place, but that "afterwards Mr. Esteban Lozada bought another parcel of land in the same place but in a lower section, and defendant went to live there."

But regardless of the conflict in the evidence as to said particular—which was settled by the trial judge adversely to

appellant—the fact of whether the house searched was located in Ceiba Norte or in Ceiba Sur ward, does not affect the validity of the search made, if the description of the house and its location, and the boundaries were so definite and specific, that the officer could with reasonable effort ascertain and identify the place as the house to be searched, inasmuch as the warrant clearly indicated that said house, located in a lot belonging to Esteban Lozada, and no other was the place intended to be searched leaving the officer with no discretion to decide on the house to be searched. *Steele* v. *United States No. 1*, 267 U. S. 498, 503; 74 A.L.R. 1498. See also *Johnson* v. *United States*, 46 F. 2d 7; *French* v. *Commonwealth*, 300 S. W. 902; *French* v. *State*, 169 N. E. 338 and *Sparks* v. *United States*, 90 F. 2d 61.

█ The lower court did not commit the three errors assigned. Nor the fourth error.

The evidence for the prosecution which consisted of the testimony of the two policemen who made the search, was to the effect that upon searching the house they found 14 lists of *bolita* numbers, a notebook with lists of *bolita* numbers and a card with *bolita* numbers on the back, inside a woman's shoe which was on a shoe rack, in one of the bedrooms. This material was admitted in evidence. (The lists of numbers, as they appear in the transcript of the evidence, are typical *bolita* material, with the three digits, the dash and units to the right, and in addition—in some of them—the names of persons and next to them the word "Paid," and sometimes the letter "P," as well as amounts added in the different pages and with the total sum corresponding to each person.)

Defendant had been living in that house for two or three months. Its owner, Esteban Lozada—a *bolitero*, brother-in-law of defendant—had never lived the house, since he had always lived in town. Corporal Torres had seen defendant on many occasions in said house, and the last time he saw him was two or three days before the search, when he saw

defendant together with a group of persons, which Torres knew were *boliteros*, operating with *bolita* material.

The evidence for the defense tended to show that defendant was an industrious person of sound reputation who earned his living and who only a few days before had come to live that house, which belonged to his brother-in-law, Esteban Lozada, because he was forced to vacate his own in order to repair it. The *bolita* material, according to Lozada, belonged to the latter, testifying in addition that he lived that house before defendant occupied it and that he had manipulated *bolita* material sometimes there, and that the *bolita* lists and numbers found by the police in his wife's shoe had been left in the house without the knowledge of defendant.

We cannot agree with appellant in that said evidence is insufficient nor in that the trial judge committed manifest error in the weighing of the evidence.

Judgment will be affirmed.